Filed April 17, 1891.

---

No. 73.

THE EVANSVILLE AND INDIANAPOLIS RAILROAD COM-
PANY *v.* SPELLBRING.

RAILROAD.— *Venue.—Suit for Service Rendered.* — *Where Brought.—Section 796 of Code of 1852 Still in Force.*—An action may be brought against a railroad corporation for services rendered it in any county where it has an office for the transaction of business, or any person resides, upon whom process may be served. Section 796 of the Code of 1852 is still in force.

SAME.—*Action for Medical Services Rendered.*—In an action against a railroad company to recover for services rendered as a physician, where it is alleged that such services were rendered at the special instance and request of the defendant, the plaintiff must show that the defendant employed him, or directed him to be employed, to perform the services for which he seeks to recover.

SAME.—*Employment.—Evidence of.*—In an action against a railroad company for medical services rendered it, it is error to admit the declarations of a physician, made at the time of the alleged employment, to the effect that the company would pay the plaintiff, unless it is first shown that such physician had authority to bind the company.

SAME.—*Power to Employ Physician.*—A physician who is only occasionally employed by a railroad company to attend to persons injured thereon, but who is not its regularly employed physician, has no power to bind the company in the employment of another physician to assist in a case in which he, the former, is specially employed by such company.

From the Clay Circuit Court.

*J. E. Iglehart* and *E. Taylor*, for appellant.
*W. B. Schwartz* and *H. Teter*, for appellee.

ROBINSON, J.—This action was commenced before a justice of the peace to recover for medical services rendered, as alleged, at the special instance and request of appellant, the services being rendered to William M. Grayson who had received injuries in an accident on appellant's road.

Trial was had and judgment was rendered against appellant. The case was then appealed to the Clay Circuit Court. In this court the appellant filed its answer in abatement, which had been filed before the justice and not sustained in that court. To this answer appellee demurred. The demurrer was sustained and appellant excepted. Motion was then made to quash the summons, but the court granted leave to amend the return thereon, then overruled the motion and appellant excepted. Appellant then answered by general denial. Trial by jury; verdict for appellee; motion for new trial overruled and excepted to.

The errors assigned in this court call in question the ruling of the trial court on the demurrer to the answer in abatement, the refusal to quash the summons and in overruling the motion for a new trial.

The appellant discusses in this court the error of the trial court in sustaining the demurrer to the answer in abatement and the third, fourth, fifth and sixth causes for a new trial. The other errors assigned are waived.

The sustaining of the demurrer to the answer in abatement is the first alleged error brought to our attention. This answer alleges that the appellant is a corporation organized and acting under the laws of this State, and owns and operates its railroad from the city of Evansville to the city of Terre Haute, in Indiana, and its said railroad enters, passes into and through the county of Clay, and is engaged in the general business of a railroad company, and carriage of passengers and freight for hire; that the general offices of said company are situate in the city of Evansville, county of Vanderburgh and State of Indiana, at which place the appellant has its usual and only place of residence; that this ac-

tion does not grow out of any business connected with any agency of said company in said county of Clay, or the office of such agent; that it is not an action against said appellant upon its liability for an injury to the person or property of the appellee, or upon said appellant's liability as a carrier. Wherefore said court has no jurisdiction, etc. The answer was duly verified.

It is not claimed in the answer that process was not served upon the proper agent of the appellant, and that it was invalid, or defective, on that account. But the contention of the appellant is that the services sued for did not grow out of the transaction of any business of the company at its offices in the county of Clay, or that it was on account of any liability as a carrier of appellee, or for any injury to his property or person; that the action being upon an account for medical services did not come under any of the causes mentioned; that in such case the courts in Clay county had no jurisdiction over the appellant, and that suit must have been commenced in Vanderburgh county, as the general offices of the appellant were in the city of Evansville, in said county, and was the usual and only place of residence of the appellant. In support of the appellant's contention we are referred to section 311, R. S. 1881, which relates to the venue of actions against railroads, and provides that suits may be instituted against them in any county in which said railroad runs, for injuries to persons or property thereon, or upon its liability as carrier.

And section 309, R. S. 1881, which provides that suits may be brought against corporations generally in any county where such corporation has an office or agency for the transaction of its business, in such county for causes " growing out of, or connected with, the business of such office." And, also, section 312, which provides that " In all other cases, the action shall be commenced in the county where the defendants, or one of them, has his usual place of residence."

If the question of the jurisdiction of the court upon the

cause of action sued on must be determined by these sections of the statute, the position assumed by the appellant would seem to be correct. But section 796, R. S. 1852, has never been repealed, and is still in force, although it was omitted from the revision of 1881. That section provides: "Any action against a corporation may be brought in any county, where the corporation has an office for the transaction of business, or any person resides upon whom process may be served against such corporation, unless otherwise provided in this act."

This section of the statute being in full force, and there being no question raised by the answer that the process was not served properly upon an agent of appellant in the county, the case is brought within the question determined in *New Albany, etc., R. R. Co.* v. *Haskell*, 11 Ind. 301, which case, upon the question of jurisdiction, was analogous to the one before the court, and hence the court in this action had jurisdiction. No error was committed in sustaining the demurrer to the answer.

The third, fourth, fifth and sixth causes assigned for a new trial are that the verdict of the jury was contrary to and not sustained by the evidence, and was contrary to law, and error of the court in the admission, over appellant's objection, evidence to the effect that one Dr. Link had entered into an agreement with appellee to attend said Grayson, and that appellant would pay appellee for his services, and other evidence that was objected to.

The appellee alleges in his complaint that he rendered the medical services at the special instance and request of the appellant.

It must therefore be shown, to entitle the appellee to recover, that appellee was employed, or directed to be employed, by appellant, or by some of its representatives with authority to make such employment, to perform the services for which he seeks to recover. The employment of the appellee by some competent authority must be made to appear

by some evidence in order to sustain the judgment. It will become necessary to look to the evidence, and if there is no evidence tending to show the appellee was employed by some competent authority then it will become necessary to ascertain whether there was evidence, either express or implied, tending to show that appellant had, in settlement with the injured party, assumed or agreed to pay appellee for his services. It is claimed by the appellee that he was employed by Dr. Link to treat Grayson, who was injured in the accident upon appellant's road.

Grayson, who was a witness for the appellee, says: "Dr. Link came from Terre Haute to see me, and brought Dr. Spellbring (the appellee) to the house with him, and they looked at my knee, and bandaged it; Dr. Link said, 'This bandage will not stay on,' and that I had better stay in the house a few weeks; but I told him I could not neglect my business, and he said the company would rather pay me for my time than to have me permanently disabled."

Over the objection of the appellant the court then permitted the witness to testify: "Dr. Link then said to Dr. Spellbring, 'You attend to the bandages, and the company will pay you for your services.' He then turned to me and said: 'You keep quiet, or the bandages will not stay on.'"

The appellee testified on his own behalf: "Dr. Link came to Saline on the morning train and invited me to go with him and see Grayson, and we went and dressed his leg," and the court permitted him, over the objection and exception of the appellant, to further state that Dr. Link said: "This limb will have to be bandaged every day or two, the company will pay you for it;" that at appellant's office, in Terre Haute, in the presence of Campbell, general agent of appellant, in Terre Haute, and Bowden, superintendent, a conversation was had in regard to settlement, and they asked appellee to interest himself in the matter, but that the appellee did not mention the amount of his bill, nor did he send in the bill until after settlement had been made with

Grayson. On cross-examination he stated that he called upon Grayson before going with Link, but not in a professional capacity; that he entered his charges from the beginning against appellant. "The company did not agree to pay me at any time for my services through any agent except Dr. Link, and at Terre Haute. Campbell told me at Terre Haute some time ago, when I presented another bill in another matter, that they left the amount of such bills to be regulated by Dr. Link, and when he said the amount was reasonable they would pay it." The words "they would pay it" do not refer to the bill in suit.

Dr. Link was examined as a witness on behalf of the appellant, but as his testimony is not material in determining the question of the admission of the evidence by which it is sought to prove a contract with him to bind the appellant, it need not be referred to at this time. This was all the evidence relating to the employment of the appellee by Dr. Link. There is no evidence whatever showing the nature and character of the relations, if any, existing between Dr. Link and the appellant. As to whether Dr. Link was such an agent or occupied such position with the company as to bind it by his contracts under the evidence was a mere matter of conjecture.

We are unable to understand under what principle the trial court permitted the evidence to go to the jury unless it was first shown that his relations to the appellant were of such a nature as to authorize him to employ the appellee. It is not even shown that Dr. Link visited Grayson under employment from the appellant, nor was there anything in the business or transaction from which it could be presumed or inferred that Dr. Link could make contracts for the appellant. The court erred in permitting this evidence to go to the jury.

Dr. Link testified on behalf of the appellant as follows:

"I am a surgeon, and practice as general physician in connection with surgery in the city of Terre Haute. I have no

general employment on the road on which Grayson was injured. I go only when sent for by the company, and charge according to what I think it worth, and have no other relations with the railroad. I stated to Dr. Spellbring that there would be difficulty in keeping the bandages on, and I asked Spellbring to look after and keep it on, and the company would doubtless pay him, or would pay him, or something of that kind. I have no authority to bind the company by employment of other physicians, and my employment by the company in this matter was for the specific purpose of visiting Grayson as a surgeon, and for no other purpose. Matters of this kind referred to by Spellbring, bills (of physicians) are referred to me only to state as to the reasonableness of the bill. I get from one to two dollars for service such as Spellbring rendered, and that is enough. I charged and received from the railroad company ten dollars for my visit to Grayson."

Under these facts there was no evidence making the appellant liable under the alleged contract with Dr. Link. The case of *Terre Haute, etc., R. R. Co. v. Brown*, 107 Ind. 336, in many respects bears a strong analogy to the one before the court, and is decisive upon the question of the employment of the appellee under the alleged contract with Dr. Link.

The other view presented under the evidence is whether the evidence tends to support the contention of the appellee, that appellant, in settlement with Grayson for the injuries he had received, assumed and agreed to pay the appellee for his services in treating Grayson's injuries.

The appellant has saved in the record many objections to the evidence admitted on the trial on this branch of the case. We do not think it necessary to express an opinion at this time as to these objections to the evidence, or to the evidence itself, for the reason that the ruling of the court upon the admission of the evidence which related to the alleged contract with Dr. Link was so material and important in the case

that it must have substantially injured the appellant on the trial of the cause.

The error committed by the court was such that we think the case should be reversed.

The case is reversed, with instructions to grant a new trial, and for further proceedings in accordance with this opinion, at appellee's costs.

Filed April 17, 1891.